IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GARY SHELDON,                          )
     ID # 13437-045,                   )
         Plaintiff,                    )
                          )    No. 3:19-CV-2041-M-BH
vs.                                    )
                              )
MARTHA UNDERWOOD, et al.,               )
         Defendants.                   )    Referred to U.S. Magistrate Judge[1]

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the court is the plaintiff's amended complaint, received on March 10, 2020 (doc. 15). Based on the relevant filings and applicable law, the plaintiff's amended complaint should be **DISMISSED** with prejudice, and his motion for *Preliminary Injunction Temporary Restraining Order*, received on April 16, 2020 (doc. 18), as supplemented on November 30, 2020 (doc. 26), should be **DENIED**.

## I.      BACKGROUND

On August 27, 2019, Gary Sheldon (Plaintiff), an inmate at the Federal Correctional Institute at Seagoville, Texas (FCI-Seagoville), sued its warden, two prison psychologists, and the compound Lieutenant under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* doc. 3 at 5-6.)[2] He amended his complaint on March 10, 2020, to add 11 more defendants, including the new warden, another prison psychologist, two additional Lieutenants, three mail room officials, two correctional officers, the regional director, and the Bureau of Prisons (BOP) General Council. (*See* doc. 15 at 1-2.) On April 16, 2020, Plaintiff

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

provided additional details about his claims against the defendants and voluntarily withdrew his claims against the regional director and the BOP General Council in his responses to a Magistrate Judge's Questionnaire (MJQ).  (*See* doc. 17; *see id.* at 41-42.)  He alleges claims against the defendants in their individual and official capacities relating to his classification as a sex offender by the wardens and the allegedly unconstitutional conditions and constitutional violations resulting from the classification.  (*See* doc. 15 at 13-15; doc. 17.)

On November 9, 2015, Plaintiff pleaded guilty in the Western District of Missouri, Springfield Division, to receipt and distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1), and was sentenced to 188 months' imprisonment, to be followed by a life term of supervised release.  (*See* Case No. 6:15-CR-3073-BP-1 (W.D. Mo.), docs. 24, 25, 34.)  The warden of FCI-Seagoville, where he was incarcerated, classified him as a sex offender under Bureau of Prisons (BOP) Policy Statement (PS) 5100.08.  (*See* doc. 15 at 6; doc. 17 at 5.)  The warden's successor maintained the classification.  (*See* doc. 15 at 7; doc 17 at 11-12.) On or around December 7, 2018, Plaintiff submitted a BOP Request for Administrative Remedy challenging his classification on the basis that his offense of conviction was not a sex offense under the United States Sentencing Guidelines.  (*See* doc. 3 at 11.)  Citing PS 5100.08, the warden denied his Request for Administrative Remedy.  (*See id.*)  Plaintiff's appeals to the regional director, and then to the BOP's general counsel, were also denied.  (*See id.* at 10, 12-14; doc. 15 at 13.)

On October 30, 2018, Plaintiff was placed on a Correctional Management Plan (CMP) after one of the prison psychologists determined, based on his interpretation of PS 5100.08 and PS 5324.10, that Plaintiff had received publications by mail which contained sexually explicit content. (*See* doc. 15 at 8; doc. 17 at 16-17.)  Plaintiff claims that he was obligated to participate in the CMP because of his classification as a sex offender.  (*See* doc. 15 at 8; doc. 17 at 17.)

2

On December 26, 2018, one of the prison psychologists reviewed six envelopes from Gabe Edwards (Gabby's Lounge) addressed to Plaintiff, which had been intercepted by mail room officials and sent to the psychology staff for review.  (*See* doc. 15 at 8; doc. 17 at 20.)  Plaintiff did not receive a confiscation or rejection notice for these materials.  (*See id.*)  The prison psychologist determined that the contents of the envelope included "risk-relevant" materials and issued an incident report for violating conditions of his CMP on December 28, 2018, which was delivered to Plaintiff by one of the compound Lieutenants.  (*See* doc. 15 at 8-9, 19.)

On August 12, 2019, one of the prison psychologists reviewed publications mailed to Plaintiff which had been delivered to psychology staff by mail room officials.  (*See* doc. 15 at 8; doc. 17 at 17.)  The psychologist refused to provide Plaintiff with a confiscation notice.  (*See* doc. 17 at 15.)  The mail contained sexually graphic stories, and because Plaintiff was classified as a sex offender and had been placed on a CMP, he was issued another incident report, which was delivered to him by one of the Lieutenants.  (*See* doc. 15 at 8-9, 20.)  Plaintiff received another incident report on August 19, 2019, for violating the conditions of his CMP after one of the psychologists reviewed a mail room official's rejection letter of mail from 4 the Pack Entertainment because the materials contained sexually explicit photos.   (*See* doc. 17 at 72.)  He did not receive a rejection notice.  (*See id.* at 45, 49.)

On January 28, 2020, one of the Lieutenants and a correctional officer allegedly searched Plaintiff's legal paperwork in his unit's legal storage area and confiscated approximately 150 images of scantily clad and provocatively posed women and 30 images of girls.  (*See* doc. 15 at 10, 12, 21; doc. 17 at 32, 56.)  They then delivered the confiscated images to one of the prison psychologists, who in turn created an incident report for another of the Lieutenants to issue to Plaintiff for violating the conditions of his CMP.  (*See* doc. 15 at 9-10, 12, 21; doc. 17 at 32-33,

56-57.)  Neither the Lieutenants, correctional officer, nor psychologist provided Plaintiff with a confiscation notice.  (*See* doc. 15 at 9-10, 12.)  On January 30, 2020, Plaintiff was issued a disciplinary hearing notice for his January 28, 2020 noncompliance with his CMP.  (*See id.* at 23.)

On January 31, 2020, a correctional officer searched Plaintiff's locker and bunk and confiscated several binders of erotica and images depicting pornography.  (*See* doc. 15 at 12, 22; doc. 17 at 62.)  Plaintiff did not receive a confiscation notice.  (*See* doc. 15 at 12; doc. 17 at 62-63.)  Based on the confiscated erotica binders and other erotica and pornography, one of the Lieutenants delivered an incident report to Plaintiff on February 1, 2020, for possession of an unauthorized item.  (*See* doc. 15 at 10, 22; doc. 17 at 37, 39.)

In this lawsuit, Plaintiff challenges his classification as a sex offender under PS 5100.08 on the grounds that his offense of receipt and distribution of child pornography is not a sex offense under U.S.S.G. § 4B1.5, and he claims he was denied due process in connection with the classification because the warden "fail[ed] to provide the plaintiff an opportunity to clear his name, and disprove the classification., which gives rise to the stigma of being classified as sex offender." (doc. 17 at 5; *see also* doc. 15 at 6, 13.)  His classification as a sex offender allegedly resulted in his placement on a CMP, which obligated him to participate in a mandatory treatment program. (*See* doc. 15 at 14.)  If not for his classification as a sex offender or the obligation to participate in mandatory treatment, he "would not have been [ ]referred to psychology or given any incident reports" and subject to all the searches, confiscations, and/or rejections by the various defendants that are directly related to his classification.  (*Id.*)  According to Plaintiff, his placement on a CMP also violated due process because he was not convicted of a sex offense under U.S.S.G. § 4B1.5, violated his First Amendment and equal protection rights, and constituted a "stigma-plus infringement of [his] liberty interests."  (doc. 17 at 17.)

4

Additionally, Plaintiff claims that his due process rights were violated because he was not given any confiscation or rejection notices for the publications and images that were the subject of the CMP assignment and incident reports. (*See* doc. 15 at 15; doc. 17 at 7, 15, 19-20, 23-24, 27, 29, 32, 34, 37, 39, 44-45, 48-49, 52-53, 56, 58, 62-63.) He argues that the publications and images were constitutionally protected under the First Amendment, and that their confiscation and rejection violated his rights under it, as did the BOP's mail filtering policies and application of the Ensign Amendment. (*See* doc. 15 at 11-12, 14-15; doc. 17 at 3, 7-8, 12, 15, 20, 24, 29, 34, 39, 45, 48-49, 52-53, 58, 62-63.) The defendants also allegedly violated his equal protection rights by confiscating and rejecting the images and publications and by issuing him incident reports. (*See* doc. 17 at 15-16, 20, 24-25, 29-30, 44-45, 48-49, 52, 62-63.)

Finally, Plaintiff alleges that the defendants were part of a conspiracy to violate his civil rights and coerce, deprive, prevent or hinder his exercise of his due process, equal protection, and First Amendment constitutional rights. (*See* doc. 17 at 2-4, 7-8, 11-12, 16, 19, 21, 23-24, 28, 30, 32-34, 38-39, 45-46, 50, 53-54, 56-58, 63-64.) He seeks monetary damages and declaratory relief and injunctive relief "against the [CMP], sex offender classification, and mail filtering policies." (doc. 15 at 16; *see also* doc. 17 at 67.)

## II.    PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a

claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    *Bivens*

As noted, Plaintiff sues the individual defendants under *Bivens*, in which the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. 403 U.S. at 388. *Bivens* is "the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors." *Chapman v. United States*, No. 4:06-CV-426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27, 2006); *see also Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).

### A.    <u>Official Capacity Claims</u>

A *Bivens* action only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir.1999). Nor may a *Bivens* action be brought against a federal agency. *FDIC v. Meyer,* 510

U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agriculture,* 55 F.3d 991, 995 (5th Cir. 1995).  Because they are equivalent to claims against the federal agencies who employ them, *Bivens* claims against federal employees in their official capacities are therefore also barred. *See Kentucky v. Graham,* 473 U.S. 159, 165-67 (1985). This is because the purpose of a *Bivens* cause of action is to deter a federal officer from violating a person's constitutional rights.  *Meyer,* 510 U.S. at 485; *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 70 (2001).  Any *Bivens* claims against defendants in their official capacities should be dismissed.

## B.    First Amendment

Plaintiff alleges that the defendants violated his First Amendment rights when they interfered with his receipt and possession of publications considered to be sexually explicit or risk-relevant by confiscating or rejecting them, applying the Ensign Amendment, and issuing him incident reports.  (*See* doc. 15 at 11-12, 14-15; doc. 17 at 3, 7-8, 12, 15, 20, 24, 29, 34, 39, 45, 48-49, 52-53, 58, 62-63.)[3]

Neither the Supreme Court nor the Fifth Circuit have extended *Bivens* to First Amendment claims.  *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("[The Supreme Court] ha[s] never held that *Bivens* extends to First Amendment claims."); *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) (noting that the Supreme Court has not recognized a *Bivens* remedy for a claim under the First Amendment).  The Supreme Court has only extended *Bivens* "beyond the deprivation of Fourth Amendment rights on two occasions: for violations of the Fifth Amendment Due Process Clause for gender discrimination, *Davis v. Passman*, 442 U.S. 228 (1979), and for violations of the Eighth Amendment prohibition against cruel and unusual punishment, *Carlson v.*

---

[3] The Ensign Amendment "prohibits the use of federal funds to 'distribute or make available to a prisoner any commercially published information or material that is sexual[ly] explicit or features nudity.'"  *Boyd v. Staler*, B. 03-149-P, 2008 WL 2977363, at *3 (W.D. La. Aug. 1, 2008) (quoting 28 U.S.C. § 530C(b)(6)(D)).

*Green*, 446 U.S. 14 (1980)." *Butts*, 877 F.3d at 587. It has since "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (noting that the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants" for the past 30 years).

To determine whether a *Bivens* remedy is available, a court must first assess whether the plaintiff's "claim presents a new *Bivens* context." *Butts*, 877 F.3d at 587. If so, a court must then consider whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress'" before extending *Bivens* to that new context. *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted). A *Bivens* remedy also "may be foreclosed by congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at 587-88 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Here, Plaintiff's First Amendment claims are outside the three contexts in which the Supreme Court has recognized a *Bivens* remedy. *See Bivens*, 403 U.S. at 397 (addressing Fourth Amendment claim); *Davis*, 442 U.S. at 248-49 (addressing Fifth Amendment claim); *Carlson*, 446 U.S. at 18-23 (addressing Eighth Amendment claim). The Supreme Court has expressly stated that it has never held that *Bivens* applied in the First Amendment context, and the Fifth Circuit has found that a First Amendment claim under *Bivens* likely presents a new context. *See, e.g.*, *Reichle*, 566 U.S. at n.4; *Butts*, 877 F.3d at 588 ("Because the Supreme Court has not recognized a *Bivens* remedy in the First Amendment context, Butts's claim likely presents a new context under *Bivens*."); *Brunson v. Nichols*, 875 F.3d 275, 279 n.3 (5th Cir. 2017) ("[T]he Supreme Court strongly cautioned against extending *Bivens* to new contexts. . . . A First Amendment claim is likely a new context."). Accordingly, Plaintiff's First Amendment claims present a new context

8

for purposes of *Bivens*. *See Mattes v. Carvajal*, No. 3:20-cv-1917-B-BN, 2020 WL 5505662, at *5 (N.D. Tex. Aug. 13, 2020) (finding that the plaintiff's First Amendment claim presented a new context under *Bivens*); *Biron v. Upton*, No. 4:15-CV-205-P, 2020 WL 85146, at *4-5 (N.D. Tex. Jan. 7, 2020) (same); *Begay v. Leap*, No. 3:17-CV-2639-N-BT, 2019 WL 1318410, at *3 (N.D. Tex. Feb. 26, 2019) (same).

Nevertheless, Plaintiff appears to have an alternative remedy available to address his alleged harm through the BOP's administrative grievance procedures, which enables "inmate[s] to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). This formal administrative grievance process has been recognized "as an alternative process foreclosing a [*Bivens*] remedy." *Brunson v. Nichols*, No. 1:14-CV-2467, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018) (citing cases); *see also Begay*, 2019 WL 1318410, at *3.

In addition, courts have recognized special factors that dictate hesitation in extending *Bivens* to the First Amendment context, including "significant separation-of-powers concerns" that require "'an assessment of [the new implied remedy's] impact on governmental operations systemwide'—an undertaking for which Congress is best suited." *Begay*, 2019 WL 1318410, at *4 (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Biron*, 2020 WL 85146, at *7-8. "[O]ther district courts recently faced with similar questions about implying a *Bivens* remedy in the First Amendment context have declined to do so because such action would 'violate Congress's intent, create increased costs on the Bureau of Prisons, and have a harmful effect on institutional security and federal officers' discharge of their duties." *Id.* at *4 (quoting *Butler v. Porter*, No. 2:17-cv-0230, 2018 WL 6920355, at *3 (W.D. La. Sept. 10, 2018), *rec. adopted*, 2019 WL 81677 (W.D. La. Jan. 2, 2019)). This Court agrees with this reasoning.

9

Given the availability of alternative remedies, and the existence of special factors counseling hesitation, Plaintiff presents no grounds for extending *Bivens* to his First Amendment claims. Moreover, "a prison inmate retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Ayers v. Johnson*, 247 F. App'x 534, 536 (5th Cir. 2007) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Plaintiff's allegations that the defendants rejected his mail and confiscated items in his possession, denying him sexually explicit materials, do not state a constitutional violation. *See, e.g.*, *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999) (affirming dismissal of Arizona prisoner's First Amendment challenge to prison regulation banning possession of sexually explicit materials); *Guest v. United States*, No. 5:13-CV-283, 2014 WL 2881958 at *2, 4 (M.D. Ga. June 25, 2014) ("There is no law, case law or otherwise, that establishes that a return of mail to the sender, even if erroneously done, is unconstitutional.").

For these reasons, Plaintiff fails to state a *Bivens* claim under the First Amendment claims.

## C.    <u>Procedural Due Process</u>

Plaintiff claims he was denied due process by the warden and her successor when he was classified as a sex offender because the warden "fail[ed] to provide the plaintiff an opportunity to clear his name, and disprove the classification." (doc. 17 at 5; *see also id.* at 11.) He argues that he "was never convicted of a sex offense." (*id.* at 6; *see also* doc. 15 at 13.) He also claims that his CMP assignment by the psychologists violated due process because he was not convicted of a sex offense and was therefore entitled to be heard. (*See* doc. 17 at 16-17.)

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law". U.S. CONST. amend. V. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property'

10

is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)) (emphasis in original);[4] *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.").

Due process requires the government to provide parties with notice that is reasonably calculated to apprise all interested parties of actions affecting their interests. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Armendariz-Mata v. U.S. Dep't of Justice, Drug Enf't Admin.*, 82 F.3d 679, 683 (5th Cir. 1996). When government action will directly affect a person's liberty or property interests, the government is required to ensure that those individuals whose interests are at stake are afforded sufficient notice. *See Echavarria v. Pitts*, 641 F.3d 92, 94 (5th Cir. 2011).

### 1. *Sex Offender Classification and CMP Assignment*

"Congress has given federal prison officials full discretion to control" prisoner classification in the BOP system. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). In classifying inmates, the BOP makes a Public Safety Factor (PSF) determination by considering "relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." BOP P5100.08, Inmate Security Designation and Custody Classification, Ch. 5 at p. 7. A PSF of "sex offender" can be entered for an "inmate whose behavior

---

[4] *Zinermon* was a § 1983 case applying the Due Process Clause of the Fourteenth Amendment. *See Zinermon*, 494 U.S. at 125. The Fifth Circuit has recognized, however, that the constitutional torts authorized by § 1983 and *Bivens* are "coextensive." *Izen v. Catalina*, 382 F.3d 566, 570 n.3 (5th Cir. 2004) *on reh'g*, 398 F.3d 363 (5th Cir. 2005); *see also Chapman*, 2006 WL 3831227, at *1 n.8.

in the current term of confinement or prior history includes . . . [p]ossession, distribution or mailing of child pornography or related paraphernalia." *Id.*, Ch. 5 at p. 8. The BOP's sex offender classification does not require a conviction for its application, provided that the inmate's presentence investigation report or other documentation shows that the activity "occurred in the current term of confinement or prior criminal history." *Id.* In PS 5324.10, the BOP provides procedures and guidelines for sex offender treatment programs; it defines a sexual offender as "any inmate with a current or prior sexual offense conviction, or a conviction for an offense that involved a sexual element." BOP P5324.10, Sex Offender Programs, at p. 1.

Generally, "[i]nmates have no protectable property or liberty interest in custodial classifications." *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir.1999) (internal quotation marks and citation omitted). When an inmate has been erroneously classified as a sex offender, however, the potential adverse consequences may be "something of value entitled to procedural due process." *Chambers v. Colo. Dep't of Corrections*, 205 F.3d 1237, 1243 (10th Cir. 2000). Nonetheless, "[a]n inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process." *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997).

Here, Plaintiff pleaded guilty to receipt and distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1), on November 9, 2015, in the Western District of Missouri, Springfield Division. (*See* Case No. 6:15-CR-3073-BP-1 (W.D. Mo.).) His sentence included conditions of supervised release mandating successful participation in "a program of sex offender counseling" and compliance with "all state and federal sex offender registration requirements," and the Fifth Circuit has confirmed that possession of child pornography qualifies as a "sex

offense" under the Sentencing Guidelines.[5] (*See id.*, doc. 34 at 5); *United States v. Allison*, 447 F.3d 402, 405 (5th Cir. 2006) (citing U.S.S.G. § 5D1.2(c)). Because Plaintiff was convicted of a sex offense in a prior adversarial setting, he received the minimum due process protections owed. *See Neal*, 131 F.3d at 831. He has failed to allege facts demonstrating that he is not a sex offender and that he should have been afforded a hearing prior to his classification by the BOP as a sex offender, or that his CMP assignment violated his due process rights because he was convicted of a sex offense. Accordingly, he fails to state a claim for procedural due process based on his classification as a sex offender and placement on a CMP.

### 2. *Stigma-Plus*

Plaintiff appears to allege a stigma-plus infringement claim based on being classified as a sex offender and his resulting CMP assignment; he states that this claim is directly related to his due process claim regarding the classification. (*See* doc. 15 at 14; doc. 17 at 5-7, 12.) He claims that the CMP assignment, the actions by the defendants, and the incident reports he was issued were due to his classification as a sex offender. (*See* doc. 15 at 10-12, 14; doc. 17 at 16-17, 20-21, 24, 27, 30, 32, 34, 37-39, 44-45, 48-50, 52-53, 56, 58, 62-63.)

To establish a violation of due process under a "stigma-plus" theory, a plaintiff must "show stigma plus an infringement of some other interest." *Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935-36 (5th Cir. 1995)). "The necessary stigma consists of concrete, false factual assertions," while infringement occurs if a

---

[5] Plaintiff claims that his conviction of offense is not a sex offense under U.S.S.G. § 4B1.5. (*See* doc. 15 at 13.) Section 4B1.5 of the Sentencing Guidelines pertains to the calculation of guideline sentence ranges for repeat and dangerous sex offenders against minors. *See* U.S.S.G. § 4B1.5. For purposes of assessing a guideline sentencing range for this subset of repeat offenders, certain offenses, including "trafficking in, receipt of, or possession of, child pornography," are excluded from the definition of a "covered sex crime." U.S.S.G. § 4B1.5 App. Note 2. The subsection does not render Plaintiff not guilty of a sex offense, but only affects how his sentence would be calculated if he were within this subset of repeat sex offenders.

government actor "sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or the federal constitution as incorporated against the states." *Tebo v. Tebo*, 550 F.3d 492, 503 (5th Cir. 2008) (quoting *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995)) (internal quotation marks omitted). The Fifth Circuit has found "sufficient stigma only where a state actor has made concrete, *false* assertions of *wrongdoing on the part of the plaintiff.*" *Does 1-7*, 945 F.3d at 313 (quoting *Blackburn*, 42 F.3d at 936) (emphasis in original).

Here, Plaintiff's claim that the alleged stigma he suffered was being classified as a sex offender is liberally construed as alleging that his classification as a sex offender was a false factual assertion of wrongdoing by him. As discussed, he was convicted of a sex offense when he was convicted of the receipt and distribution of child pornography. *See Allison*, 447 F.3d at 405 (confirming that possession of a child pornography qualifies as a "sex offense" under the Sentencing Guidelines). He has not plausibly alleged a concrete, false assertion of wrongdoing by him, or a due process claim based on a "stigma-plus" theory.

### 3. *Confiscation and Rejection Notices*

Plaintiff claims that his due process rights were violated because the defendants failed to provide him with rejection and/or confiscation notices. (*See* doc. 15 at 15; doc. 17 at 7, 15, 19-20, 23-24, 27, 29, 32, 34, 37, 39, 44-45, 48-49, 52-53, 56, 58, 62-63.) Because he did not receive confiscation or rejection notices, he was allegedly unable to appeal the confiscations or rejections. (*See* doc. 15 at 15; doc. 17 at 15, 24, 29, 63.) He claims that the wardens knowingly authorized, directed, and/or permitted the other defendants to make confiscations and rejections without written notice. (*See* doc. 17 at 3, 12.)

Although lawful incarceration results in the loss of many rights and privileges that most citizens enjoy, prisoners may retain some liberty interests that are protected by the due process

clause.  *See Sandin v. Conner,* 515 U.S. 472, 484-85 (1995); *Madison v. Parker,* 104 F.3d 765, 767 (5th Cir.1997).  These liberty interests are generally limited to matters which affect the amount of time served by a prisoner, such as lost good-time credits and eligibility for mandatory supervision, or restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 478; *see Madison,* 104 F.3d at 767.  The due process clause "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin,* 515 U.S. at 478.

Plaintiff has alleged no loss of good-time credit as a result of his sex offender classification or CMP assignment, the confiscation and rejection of images or publications, or his incident reports.[6]  Nor has he alleged any matters that could definitively affect the amount of time he must serve.  Rather, he alleges that publications and images sent to him in the mail or already in his possession were rejected or confiscated without notice, which does not constitute the deprivation of a liberty interest protected by due process.  *See Murrell v. Casterline*, No. 03-257, 2005 WL 8171076, at *3 (W.D. La. June 22, 2005) ("[The plaintiff], as a prisoner, has no protected liberty interest, such that would be actionable under the Due Process Clause of the Fifth Amendment, in the freedom from having his mail censored or delayed by the prison officials.  He has no federally protected liberty interest in having his mail delivered to and from prison without being censored or rejected without giving him prior notice.").

Even if Plaintiff had alleged a liberty interest protected by due process, he has not shown that he was denied due process because he was issued incident reports stating the date of the

---

[6] Plaintiff has a pending habeas petition under 28 U.S.C. § 2241, in which he appears to challenge, in part, disciplinary proceedings that resulted in the loss of 14 days of good-time credits.  (*See* No. 3:20-CV-3356-B-BH, doc. 3.)  He also alleges the loss of 14 days of good-time credits in his memorandum in support of his motion for a preliminary injunction and temporary restraining order.  (*See* doc. 26 at 6.)

confiscation or rejection of publications and images, the contents of the items confiscated or rejected, and the bases for the confiscations or rejections.  (*See* doc. 15 at 19-22; doc. 17 at 72.) He does not allege that he was denied use of the BOP's grievance process to challenge the incident reports or claim that the publications and images referenced in them were wrongly confiscated or rejected.[7]  *See Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014) (holding that the state prison grievance process provided due process for sex offender to claim that his magazines were wrongfully confiscated).  He therefore fails to state a due process claim on this basis.

Additionally, to the extent Plaintiff claims that the defendants' treatment of his mail or images already in his possession without issuing confiscation or rejection notices violated 28 C.F.R. § 540.71, BOP PS §§ 5266.10, 5266.11, or any other administrative procedures (*see* doc. 17 at 24, 29, 33-34, 37, 39), an alleged failure to follow prison policies, procedures, and regulations does not give rise to a constitutional violation.  *See Lewis v. Sec. of Pub. Safety & Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) (explaining that prison rules and regulations "do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).  He therefore cannot establish a violation of his due process rights based on the violation of prison policies, procedure, or regulations.

In conclusion, Plaintiff's due process claims should be dismissed.

### D.    Equal Protection

Plaintiff claims that the defendants denied him equal protection relative to other inmates who are not classified as sex offenders or on a CMP.  (*See* doc. 17 at 15-16, 20, 24-25, 29-30, 44-45, 48-49, 52-53, 62-63.)

---

[7] Plaintiff does not allege that he challenged any of the incident reports under the BOP's grievance procedures.

"The Due Process Clause of the Fifth Amendment applies to the federal government a version of equal protection largely similar to that which governs the states under the Fourteenth Amendment," which prohibits states from denying any person within their jurisdiction the equal protection of the laws and essentially requires that all similarly situated persons be treated alike. *Rodriguez-Silva v. I.N.S.*, 242 F.3d 243, 247 (5th Cir. 2001); *see Plyler v. Doe*, 457 U.S. 202, 216, (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001). To state an equal protection claim, a plaintiff must allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Fifth Circuit "has held that sex offenders are not a suspect class for equal protection purposes." *Duarte v. City of Lewisville*, 858 F.3d 348, 354 n.4 (5th Cir. 2017) (citing *Stauffer*, 741 F.3d at 587). Nor would a subset of sex offenders on a CMP assignment constitute a suspect class because "[a] classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class." *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998). Because Plaintiff is not a member of a protected class, he may only pursue a class-of-one equal protection claim. *See Engquist*, 553 U.S. at 601.

To state class-of-one equal protection claim, a plaintiff must allege that a government actor intentionally treated him differently than others similarly situated, and there is no rational basis for the difference in treatment. *See Olech*, 528 U.S. at 564. "[T]he Fifth Circuit requires plaintiffs to show 'that the defendant deliberately sought to deprive [them] of the equal protection of the laws

17

for reasons of a personal nature unrelated to the duties of the defendant's position.'" *Lugo v. Collin County*, No. 4:11-CV-00057, 2011 WL 4378093 at *11 (E.D. Tex. Aug. 2, 2011) (quoting *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002)).  "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Little v. Tex. AG*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).  Conclusory allegations of "class of one" discrimination fail to state a claim.  *See Bell v. Woods*, 382 F. App'x 391, 392 (5th Cir. 2010).

Here, Plaintiff argues that the publications and images confiscated or rejected by the defendants, which were the bases for his incident reports, would not have resulted in a CMP assignment, been confiscated, or resulted in the issuance of an incident report if they had been possessed by an inmate not classified as a sex offender or on a CMP assignment.  (*See* doc. 17 at 15-16, 20, 24-25, 29-30, 44-45, 48-49, 52-53, 62-63.)  He offers nothing beyond his bare assertions.  He does not specifically identify any similarly situated inmates, such as those convicted of the same offense, who have similar disciplinary histories, and who were sent or possessed similar publications or images, but were not placed on a CMP assignment, did not have the items confiscated, or were not issued incident reports for the publications or photos.[8]  The Fifth Circuit has held that bare and conclusory assertions are insufficient to support a "class of one" equal

---

[8] Plaintiff attaches as exhibits to his MJQ responses a July 17, 2019 letter with no addressee from Cellmate & Convict Services, stating that all mail sent to its customers at the unit had been returned and an email exchange between Nolan Ryan Robinson to The Four Pack regarding what appears to be the return of unopened mail from the prison to The Four Pack. (*See* doc. 17 at 74-75.) Neither of these exhibits shows different treatment of similarly situated individuals. Additionally, any affidavits and correspondence of other inmates in his memorandum in support of his motion for a preliminary injunction and temporary restraining order also fail to show different treatment of similarly situated individuals. (*See* doc. 26 at 28-29, 35-38.)

protection claim, particularly where these assertions offer no basis upon which to determine that persons similarly situated to the plaintiff were treated differently without rational basis. *See Bell*, 382 F. App'x at 392 (conclusory allegation that inmate was treated differently from other sex offenders failed to state a claim where inmate did not identify any other prisoners who were sex offenders and were allowed to enroll in computer courses and inmate did not allege that other prisoners were convicted of the same offense as he was or that they were allowed into the same courses for which he applied); *Bonner v. Alford,* 594 F. App'x 266, 267 (5th Cir. 2015) ("Bonner failed to state a 'class of one' equal protection claim because his allegations did not identify any similarly situated prisoners, nor did his allegations show that he was intentionally treated differently from any other prisoners absent a rational basis.").

Plaintiff's equal protection claim is without merit and should be dismissed.

## E.    Conspiracy

Plaintiff contends the defendants conspired to, and did, violate his due process, equal protection, and First Amendment rights under the Constitution by classifying him as a sex offender, placing him on a CMP, confiscating or rejecting publications and images mailed to him or already in his possession, failing to provide notice of the confiscations or rejections of his publications and images, and  issuing him incident reports.  (*See* doc. 15 at 15; doc. 17 at  2-4, 7-8, 11-12, 16, 19, 21, 23-24, 28, 30, 32-34, 38-39, 45-46, 50, 53-54, 56-58, 63-64.)

### 1.    *Bivens Conspiracy*

A conspiracy claim is not actionable under *Bivens* alone because a plaintiff must establish an underlying constitutional violation.  *See Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 462 (W.D. Tex. 1999) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990)).  To state a claim for conspiracy under *Bivens*, a plaintiff must "establish the existence of a conspiracy" as well as a

violation of a constitutional right in furtherance of the conspiracy. *Thompson v. Johnson*, 348 F.

App'x 919, 922 (5th Cir. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)).

Here, Plaintiff alleges that the former warden "link[ed] the other defendants to the long

chain of violations," was the "'head of the snake' with the other defendants following her

leadership," and was "the 'mastermind' behind the violations and actions of the defendants." (doc.

17 at 4.)  He claims that the warden and her successor authorized, encouraged, and motivated the

prison officials to apply and interpret BOP policy statements relating to his sex offender

classification and CMP assignment, violate Plaintiff's civil and constitutional rights, and reject or

confiscate publications and images sent or belonging to Plaintiff.  (*See* doc. 17 at 2-4, 7-8, 11-12.)

He also claims that they authorized, directed, encouraged, or allowed prison and mail room

officials to confiscate or reject constitutionally protected publications and images sent or belonging

to Plaintiff without providing notice.  (*See* doc. 17 at 7, 12.)  One of the psychologists allegedly

conspired with the wardens to direct prison and mail room officials to confiscate or reject

publications and images.  (*See id.* at 19, 21.)  He claims that several of the defendants conspired

to violate his civil rights when a Lieutenant or correctional officer gave one of the psychologists

images confiscated from Plaintiff, and the psychologist in turn issued an incident report that was

delivered by another Lieutenant.  (*Id.* at 23-24, 28, 32-34, 56-58.)  He claims that the involvement

of two defendants on the same incident report indicates a conspiracy.  (*See id.* at 39, 63-64.)

Plaintiff also generally claims that several defendants had a "part" in or were a "link" in the

conspiracy and that by "connecting the 'dots'" and "connect[ing] each defendant to each other and

to the affects/violations associated with the plaintiff being classified as sex offender (stigma-plus),

it demonstrates a conspiracy."  (*Id.* at 28, 30, 38, 45-46, 50, 53-54.)

Plaintiff's conclusory allegations of an agreement, without any facts tending to show an agreement, are insufficient to state a viable conspiracy claim. *See Cardenas v. Young*, 655 F. App'x 183, 186–87 (5th Cir. 2016) (noting that the plaintiff did not allege that the defendants expressly made an agreement to violate his constitutional rights, only that two defendants ordered that he be placed in segregation and that other defendants were in agreement to deny him equal protection and due process, and finding these conclusory allegations insufficient to state a viable conspiracy claim under *Bivens*) (citing *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989)); *Richie v. Wharton County Sheriff Dep't Star Team*, 513 F. App'x 382, 385 (5th Cir. 2013) (noting the failure to allege facts suggesting an agreement to commit illegal acts) (citing *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999)); *Bowen v. Quarterman*, 339 F. App'x 479, 482 (5th Cir. 2009) (finding that allegations that it was reasonable to believe that the defendants were part of a conspiracy, without any facts that tended to show an agreement between them, were insufficient to state a viable conspiracy claim) (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)). Further, Plaintiff has not alleged a constitutional violation of his First Amendment, due process, or equal protection rights under *Bivens*, as discussed.

Because Plaintiff has failed to sufficiently plead facts to support both elements of his *Bivens* conspiracy claim, it should be dismissed.

### 2.    *42 U.S.C. § 1985(3)*

To the extent Plaintiff alleges that the defendants conspired to violate his civil rights under 42 U.S.C. § 1985(3), his claim fails.[9]

---

[9] The Supreme Court has assumed but not decided whether § 1985(3) applies to federal officers. *See Abbasi*, 137 S.Ct. at 1865-69 (assuming, but not deciding, that § 1985(3) applies to federal officers).

21

Subsection 1985(3) prohibits a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law.  42 U.S.C. § 1985(3).  To state a claim under § 1985(3), Plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives him of a right or privilege of a United States citizen.  *See Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987).  He must further allege that the conspirators were motivated by his race.  *See Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[I]n this circuit . . . the only conspiracies actionable under section 1983(3) are those motivated by racial animus.") (quoting *Deubert*, 820 F.2d at 757); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).

Even if Plaintiff's pleadings may be construed as alleging discrimination based on a class of inmates classified as sex offenders, "sex offenders are not a suspect class for equal protection purposes."  *Duarte*, 858 F.3d at n.4.  He has also not alleged any facts showing that the alleged conspiracy was motivated by racial animus.  Any claim under § 1985(3) should be dismissed.

### 3.    *Criminal Statutes*

Plaintiff also claims that the defendants conspired and acted to deprive him of his constitutional rights in violation of 18 U.S.C. §§ 241, 242, and 245. (*See* doc. 17 at 4-5, 7, 12, 16, 20-21, 23-25, 28, 30, 34, 38-39, 45-46, 49-50, 53-54, 58, 61, 64.)

Criminal statutes cannot be enforced in a civil action.  *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007).  "Private citizens do not have the right to bring a private action under a federal criminal statute."  *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010

WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 300 (5th Cir. 2003)); *see also Fierro v. Robison*, 405 F. App'x 925, 926 (5th Cir. 2010) (holding that § 241 does not provide a private cause of action); *Johnson v. Fed. Bureau of Investigation*, No. H-16-1337, 2016 WL 9776489, at *3 (S.D. Tex. Nov. 17, 2016) ("Sections 241, 242, and 245 of the United States Code title 18 do not provide a private cause of action.") (citing cases).

Because 18 U.S.C. §§ 241, 242, and 245 do not provide a civil cause of action and may not be enforced by Plaintiff, he fails to state a claim for conspiracy against the defendants under these federal criminal statutes, and his claims should be dismissed.

## IV.    INJUNCTIVE RELIEF

Plaintiff also seeks a preliminary injunction and temporary restraining order (TRO) under Federal Rule of Civil Procedure 65.  (*See* docs. 18, 26.)

The Fifth Circuit has recognized that a plaintiff may request "injunctive relief from violation of his federal constitutional rights." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Ramsey v. United States*, No. 3:96-CV-3358-G, 1997 WL 786252, at *2 n.2 (N.D. Tex. Dec. 11, 1997) (a plaintiff may seek injunctive or declaratory relief in addition to monetary relief in a *Bivens* action).  Issuing an injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."  *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quotation marks and citation omitted).  To obtain a preliminary injunction, the moving party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury outweighs any damage the order might cause to the responding party; and (4) that the injunction will not disserve the public interest.  *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir.

23

2000); *see also* Fed. R. Civ. P. 65.  If the party seeking an injunction fails to carry the "heavy burden" to show each of these prerequisites, a preliminary injunction is not warranted.  *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotation marks omitted).

 Here, all of Plaintiff's claims against the defendants under *Bivens* are without merit and are subject to dismissal as frivolous and for failure to state a claim for the reasons discussed above. *See Neitzke*, 490 U.S. at 325.  He therefore cannot establish a likelihood of success on the merits of his *Bivens* action, and his motion for a preliminary injunction and TRO should be denied.

## V. RECOMMENDATION

 The plaintiff's amended complaint, received on March 10, 2020 (doc. 15), should be **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim.  This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[10]  His The plaintiff's motion for *Preliminary Injunction Temporary Restraining Order*, received on April 16, 2020 (doc. 18), should be **DENIED**

 **SIGNED this 22nd day of February, 2021.**



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] Section1915(g), which is commonly known as the "three-strikes" provision, provides:

 In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

24

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

25