IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY SHELDON, ) | | |
|     ID # 13437-045, ) | | |
|         Plaintiff, ) | | |
| ) | | No. 3:19-CV-2041-M-BH |
| vs. ) | | |
| ) | | |
| MARTHA UNDERWOOD, et al., ) | | |
|         Defendants. ) | | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Second Amended Complaint*, received on May 10, 2021 (doc. 40) should be **DISMISSED** with prejudice, and the *Motion to Expetite* [sic] *Service/Issueing* [sic] *Plaintiff's Preliminary Injunction*, received on December 13, 2021 (doc. 44), should be **DENIED**.

### I.   BACKGROUND

Gary Sheldon (Plaintiff), an inmate previously incarcerated at the Federal Correctional Institute at Seagoville, Texas (FCI-Seagoville), sues multiple employees there in their individual and official capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He alleges that unlawful classification as a sexual offender, which resulted in the imposition of unconstitutional conditions of confinement and violations of his constitutional rights, and retaliation.

**A.   Factual Background**

On November 9, 2015, Plaintiff pleaded guilty in the Western District of Missouri, Springfield Division, to receipt and distribution of child pornography in violation of 18 U.S.C. §§

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

2252(a)(2), (b)(1), and was sentenced to 188 months' imprisonment, to be followed by a life term of supervised release. (*See* Case No. 6:15-CR-3073-BP-1 (W.D. Mo.), docs. 24, 25, 34.) The warden of FCI-Seagoville, where he was incarcerated, applied BOP Policy Statement (PS) 5324.10, and classified him as a sexual offender. (*See* doc. 40 at 2.)[2] The warden's successor maintained the classification. (*See id.* at 3.) On October 30, 2018, Plaintiff was placed on a Correctional Management Plan (CMP) after one of the prison psychologists determined that he had publications mailed to him which contained sexually explicit content. (*See id.* at 4.) Plaintiff claims that he was obligated to participate in the CMP because of his classification as a sexual offender under PS 5324.10. (*See id.* at 3-4.) According to him, neither the regional director nor the BOP general counsel took action to stop or correct his classification as a sexual offender or the resulting actions of which he complains. (*See id.* at 6-7.)

On December 26, 2018, one of the prison psychologists reviewed six envelopes mailed to Plaintiff from Gabe Edwards (Gabby's Lounge); he claims that the envelopes had been redirected by mail room officials and sent to the psychologist for review in violation of prison policies and procedures authorizing only the warden (and the associate warden in the warden's absence) to reject publications and not providing for the redirection of publications to anyone else. (*See id.* at 4, 11.) Plaintiff did not receive a confiscation or rejection notice for these materials. (*See id.*) He claims that the psychologist's actions were taken because of his classification as a sexual offender and placement on a CMP, and that he was issued an incident report for refusing to participate in the CMP. (*See id.*)

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

On August 12, 2019, one of the prison psychologists reviewed publications mailed to Plaintiff which had been redirected to psychology staff by mail room officials because of his classification as a sexual offender, and because they were alleged to contain sexually graphic stories. (*See id.* at 4.) He claims that the publications did not contain impermissible sexually explicit material under BOP policy. (*See id.*) The psychologist issued Plaintiff incident reports under the direction of the warden and the other psychologists, and she applied the CMP under PS 5324.10 under the direction of the warden. (*See id.*) Plaintiff received an incident report from the psychologist on August 19, 2019, for violating the conditions of his CMP after the psychologist reviewed a mail room official's rejection letter of mail from 4 the Pack Entertainment because it contained sexually explicit photos. (*See id.* at 12.) Plaintiff claims the psychologist's statement for the rejection raised concerns because the letter it referenced from the mail room staff was actually an email, and the review of the materials was not handled properly under BOP policy. (*See id.*)

On January 28, 2020, one of the lieutenants and a correctional officer allegedly searched Plaintiff's legal paperwork in his unit's legal storage area and confiscated approximately 150 images of scantily clad and provocatively posed women. (*See id.* at 5-6, 8, 12.) They then delivered the confiscated images to one of the prison psychologists, who in turn created an incident report for another of the lieutenants to issue to Plaintiff for violating the conditions of his CMP. (*See id.* at 5-6, 8.) The lieutenants and the correctional officer did not provide Plaintiff with a confiscation notice. (*See id.* at 5-6, 8, 12.)

On January 31, 2020, a correctional officer searched Plaintiff's locker and bunk and confiscated several binders of erotica and images depicting pornography. (*See id.* at 6, 8, 12.) Plaintiff did not receive a confiscation notice. (*See id.*) Based on this confiscated erotica and

3

pornography, one of the lieutenants issued an incident report to Plaintiff. (*See id.* at 6.) He claims these publications were for use in this action as evidence, and that the confiscation and incident report were motivated by his classification as a sexual offender and his CMP placement. (*See id.* at 6, 8, 12.)

On February 17, 2021, a non-defendant prison officer confiscated sexually explicit pictures and writings from Plaintiff's locker that were allegedly for use as evidence in this action. (*See id.* at 14.) He claims he had to explain and train the officer how to complete a confiscation notice. (*See id.*) One of the psychologists later denied his request to have these confiscated materials sent to the Court under BOP policies. (*See id.* at 14.) On February 22, 2021, the new warden rejected three books because they were alleged to contain sexually explicit material, i.e., explicit sex stories. (*See id.* at 13.) Plaintiff received rejection notices for each book, which he claims were permitted under BOP policy defining sexually explicit material. (*See id.*) One of the mail room officials and the new warden also rejected publications that were allegedly permitted under BOP policy; Plaintiff filed internal grievances in April 2021 for those rejections. (*See id.* at 14-15.)

On June 15, 2021, Plaintiff requested from the new warden the record of appeal mailed to him in Case No. 3:20-CV-3356-B-BH; he was told by his unit manager to return the next day. (*See* doc. 41 at 4.) The next day, he received responses to several of his internal grievances, and one of the lieutenants searched his locker and cell area, confiscated property he had received through the mail room, and placed him in the Special Housing Unit (SHU). (*See id.* at 4-5; doc. 47 at 4-5.) Plaintiff was issued an incident report by the psychology official. (*See* doc. 47 at 4.) On August 3, 2021, the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) mailed him a notice in the appeal of Case No. 3:20-CV-3356-B-BH, which was delivered to him at the prison "opened and stapled closed" on August 31, 2021. (doc. 47 at 3; doc. 41 at 5-6.) According

4

to Plaintiff, the notice was maliciously withheld by one of the mail room officials, and during this time, the new warden destroyed evidence he intended to use in this action and his appeal. (*See* doc. 41 at 5-6; doc. 47 at 3-4.)

**B.  Procedural History**

Plaintiff initially filed this *Bivens* action on August 27, 2019, against the warden, two prison psychologists, and the compound lieutenant at FCI-Seagoville. (*See* doc. 3 at 5-6.) On March 10, 2020, he amended his complaint to add 11 more defendants, including the new warden, another prison psychologist, two additional prison lieutenants, three mail room officials, two correctional officers, the regional director, and the Bureau of Prisons (BOP) general counsel.[3] (doc. 15 at 1-2.) On April 16, 2020, he provided additional details about his claims against the defendants and voluntarily withdrew his claims against the regional director and the BOP's general counsel in his responses to a Magistrate Judge's Questionnaire (MJQ). (*See* doc. 17.) On February 22, 2021, it was recommended that his amended complaint be dismissed with prejudice. (*See* doc. 31.) He objected to the recommendation on March 11, 2021. (*See* doc. 35.) His objections sought to clarify some of his claims based on a distinction between a "sexual offense" and a "sex offense", and he was ordered to file a final amended complaint limited to only those claims. (*See* doc. 37.)

On May 10, 2021, Plaintiff filed his second amended complaint, in which he sued FCI Seagoville's warden, new warden, three prison psychologists, three prison lieutenants, three mail room officials, two correctional officers, the regional director, and the BOP general counsel. (*See* doc. 40 at 1-8.) On September 27, 2021, he was granted leave to supplement his second amended complaint to add a First Amendment claim of retaliation based on events that occurred after he

---

[3] Although Plaintiff names the BOP's "General Council" as the defendant, it appears that he is referring to the BOP's general counsel, as identified in the exhibits attached to his amended complaint. The Court will refer to this defendant as "BOP general counsel" throughout this recommendation.

filed this action. (*See* docs. 41, 42.) Plaintiff was again granted leave to supplement the complaint to add another mailroom official and a psychology official as defendants in connection with his retaliation claim. (*See* docs. 47, 48.)

C. **Claims**

Plaintiff challenges his classification as a sexual offender under PS 5324.10 on grounds that his offense of receipt and distribution of child pornography is a "sex offense," not a "sexual offense" for purposes of PS 5324.10. (*See* doc. 40 at 9-10.) He claims that to the extent the wardens classify him as a sexual offender, and the defendants "affirm support enable and direct the classification of plaintiff as a 'sexual offender' per P5324.10 (on October 30, 2018), they violate his rights to equal protection of the law and freedom from 'stigma-plus' due process infringements[.]" (*Id.* at 11, 16.) These violations and infringements include the defendants' rejection or confiscation of publications without proper notice or based on the misapplication of prison policies and their failure "to provide [him] an opportunity to review the rejected publication in order to correct the issue or to adequately prepare for an appeal." (*Id.* at 11.) He also claims that the defendants' rejection or confiscation of and refusal to preserve his publications for use in litigation violates his First and Fourth Amendment rights. (*See id.* at 12-13.)

Plaintiff also claims that because of his alleged misclassification as a sexual offender under PS 5324.10, the defendants violated his First, Fourth, and Fifth Amendment rights by placing him on a CMP, enforcing the CMP's restrictions, mishandling his mail and property, and subjecting him to disciplinary action and sanctions for violating the CMP. (*See id.* at 16-21.) They also "violated federal law and committed transgressions comprising Bivins [sic] and conspiracy claims, in their individual capacities, by the same and other actions and ommissions [sic]." (*Id.* at 21.)

6

Finally, Plaintiff claims that because he filed this action, another civil action, and internal grievances, the defendants have retaliated against him in violation of the First Amendment by placing him the SHU, confiscating and destroying his property, maliciously withholding court mail from his other civil case, and issuing an incident report. (*See* doc. 41 at 3-8; doc. 47 at 1-6.) He contends that if not for his unconstitutional CMP assignment, disciplinary action would not have been taken and he would not have been placed in the SHU. (*See* doc. 47 at 6.)

He seeks (1) monetary damages; (2) declaratory relief "in the form of a declaration that the defendants' actions violated Plaintiff's rights, that P5324.10's provisions regarding a 'sexual offender' are improperly applied to him, that the imposition of the CMP unconstitutionally restricts his First, Fourth, and Fifth Amendment rights, and that the practices at issue are unlawful"; and (3) injunctive relief "against Defendants in their official capacities to enjoin prison officials to follow policy and law that P5324.10 be only properly applied, that he be afforded due process of law in that determination, and that Defendant prison officials only impose a CMP, interfere with mail, confiscate mail and property, expose someone to disciplinary action, etc., where such due process protections are ensured." (doc. 40 at 22-23; *see also* doc. 44.)

## II.  PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a

claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. *BIVENS*

As noted, Plaintiff sues the individual defendants under *Bivens*, in which the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. *Bivens*, 403 U.S. at 388-98. *Bivens* mirrors but is not "'the substantial equivalent of 42 U.S.C. § 1983.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citation omitted).

**A.    Official Capacity Claims**

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). *Bivens* only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against a federal agency or the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). This is because the purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Corr. Servs. Corp.*

*v. Malesko*, 534 U.S. 61, 70 (2001).  Any *Bivens* claims against the defendants in their official capacities should be dismissed.

**B.      Individual Capacity Claims**

The United States Supreme Court has reiterated that "*Bivens* was the product of an '*ancien regime*' that freely implied rights of action." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Abbasi*, 137 S. Ct. at 1855) (quoting in turn *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)).  *Bivens* claims are now generally relegated to the only three circumstances in which the Supreme Court allowed a private right of action against federal officers for constitutional violations: "(1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389-90; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Oliva*, 973 F.3d at 442 (partial internal citations omitted).  To determine whether *Bivens* allows a cause of action, courts must consider: (1) whether a case involves a "new context" that is distinct from these cases, and (2) "whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019) (citation omitted).  Virtually anything other than the circumstances presented in *Bivens*, *Davis*, or *Carlson* is a "new context," generally precluding the existence of a *Bivens* remedy. Oliva, 973 F.3d at 442 (citing *Abbasi*, 137 S.Ct. at 1865).  The Supreme Court has recently emphasized that its "understanding of a 'new context' is broad." *Hernandez v. Mesa*, — U.S.—, 140 S.Ct. 735, 743 (2020). It has also made clear that extending *Bivens* to new contexts is now a "'disfavored' judicial activity." *Abbasi*, 137 S.Ct. at 1857.

### *1.  New Context*

In deciding whether a plaintiff's claim arises in a new context under *Bivens*, the "proper test" is whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859; *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'"). "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way*.'" *Oliva*, 973 F.3d at 442 (quoting *Cantú*, 933 F.3d at 422) (emphasis in original); *see also Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new context. To be sure, '[n]o one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.'") (quoting *Cantú*, 933 F.3d at 422) (internal citations omitted).  Although it did not "endeavor[] to create an exhaustive list of differences that are meaningful enough to make a given context a new one," the Supreme Court provided some examples that might be instructive:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60.

10

Here, Plaintiff's constitutional challenges under the First, Fourth, and Fifth Amendments to his classification as a sexual offender and the allegedly unconstitutional conditions and constitutional violations resulting from the classification, and his First Amendment retaliation claim, arise in new contexts under *Bivens*. This is the case even if the rights at issue flow from the Fourth and Fifth Amendments, which were also at play in *Bivens* and *Davis*, respectively.[4] *See*, *e.g.*, *Cantú*, 933 F.3d at 422; *Canada*, 950 F.3d at 307 (affirming that *Davis*, which dealt with a gender discrimination claim under the Due Process Clause of the Fifth Amendment, does not bring the panoply of Fifth Amendment rights into play under *Bivens*).

### 2. *Special Factors*

"When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether 'special factors' counsel against inferring such a cause of action in the absence of 'affirmative action by Congress' to create one." *Dudley v. United States*, No. 4:19-cv-317-O, 2020 WL 532338, at *6 (N.D. Tex. Feb. 3, 2020) (quoting *Abbasi,* 137 S. Ct. at 1857). This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,* 137 S. Ct. at 1857-58. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858. "[I]f there is an alternative remedial structure present in a certain case," the existence of that process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

---

[4] None of the three circumstances in which the Supreme Court has allowed a *Bivens* action involved alleged violations under the First Amendment. The Fifth Circuit, in declining to extend *Bivens* to First Amendment retaliation claims, has underscored "the fact that the Supreme Court has not only never recognized a *Bivens* cause of action under the First Amendment, but also once rejected a First Amendment retaliation *Bivens* claim for federal employees," however. *Watkins v. Three Admin. Remedy Coordinators of BOP*, 998 F.3d 682, 686 (5th Cir. 2021) (internal citations omitted).

Here, special factors counsel against extending *Bivens* to Plaintiff's First, Fourth, and Fifth Amendment claims. First, Congress has already legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* "*Abbasi* makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to." *Dudley*, 2020 WL 532338, at *7.

Courts considering the extension of *Bivens* to new areas in the prison context have also noted that the "administration of the federal prison system" is a special factor counseling hesitation against such expansion. *Nabaya v. Bureau of Prisons*, No. 3:19-cv-215-L-BN, 2020 WL 7029909, at *5 (N.D. Tex. Oct. 7, 2020), *rec. adopted*, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020); *see also Petzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration.") (citing *Abbasi*, 137 S. Ct. at 1857-58); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'") (quoting *Abbasi*, 137 S. Ct. at 1865) (citations omitted).

In addition, an alternative remedial process exists for Plaintiff, i.e., the Federal Bureau of Prisons' Administrative Remedy Program. "Under this program, prisoners can file grievances about any aspect of their confinement, the agency must provide written responses in specified time frames, and prisoners may appeal institutional-level responses to the agency's regional and central offices." *Dudley*, 2020 WL 532338, at *8 (citing 28 C.F.R. §§ 542.10-19 (2017)). Since *Abbasi*, numerous courts have recognized the Federal Bureau of Prisons' Administrative Remedy Program as an alternative process and a special factor that forecloses expansion of the *Bivens* remedy. *See, e.g., Dudley*, 2020 WL 532338, at *7; *Begay v. Leap*, No. 3:17-CV-2639-N-BT, 2019 WL 1318410, at *3 (N.D. Tex. Feb. 26, 2019) ("'[S]everal courts have explicitly recognized the administrative remedy program ("ARP") available in the prison setting as an alternative process foreclosing a personal-capacity damages remedy.'"), *rec. adopted*, 2019 WL 1315901 (N.D. Tex. Mar. 22, 2019); *Brunson v. Nichols*, No. 1:14-CV-2467, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018) (citing cases), *rec. adopted*, 2019 WL 545479 (W.D. La. Feb. 11, 2019).

Because Plaintiff's *Bivens* claims each involve a new context under *Abbasi*, and because special factors exist counseling against the extension of *Bivens* to them, his claims should be dismissed with prejudice.

### IV.     CONSPIRACY

Plaintiff also generally contends that the defendants "violated federal law and committed transgressions comprising Bivins [sic] and conspiracy claims, in their individual capacities, by the same and other actions and ommissions [sic]." (*See* doc. 40 at 21.) He does not otherwise develop these allegations or provide any facts to support them. To the extent the allegations may be liberally construed as alleging a claim of conspiracy under *Bivens*, the claim fails.

A conspiracy claim is not actionable under *Bivens* alone because a plaintiff must establish an underlying constitutional violation. *See Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 462 (W.D. Tex. 1999) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990)). To state a claim for conspiracy under *Bivens*, a plaintiff must "establish the existence of a conspiracy" as well as a violation of a constitutional right in furtherance of the conspiracy. *Thompson v. Johnson*, 348 F. App'x 919, 922 (5th Cir. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).

Here, beyond his conclusory statement, Plaintiff does not allege any facts to show the existence of a conspiracy among any of the defendants. *See Thompson*, 348 F. App'x at 922; *Cardenas v. Young*, 655 F. App'x 183, 186-87 (5th Cir. 2016) (noting that the plaintiff did not allege that the defendants expressly made an agreement to violate his constitutional rights, and finding conclusory allegations insufficient to state a viable conspiracy claim under *Bivens*) (citing *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989)); *Richie v. Wharton Cnty. Sheriff Dep't Star Team*, 513 F. App'x 382, 385 (5th Cir. 2013) (noting the failure to allege facts suggesting an agreement to commit illegal acts) (citing *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999)). Moreover, as discussed, he has not alleged a constitutional violation of his First Amendment, Fourth Amendment, or Fifth Amendment rights under *Bivens*.

Because Plaintiff has failed to sufficiently plead facts to support both elements of his *Bivens* conspiracy claim, it should be dismissed.

## V. INJUNCTIVE RELIEF

Plaintiff also seeks expedited service and issuance of a preliminary injunction. (*See* doc. 44.)

14

The Fifth Circuit has recognized that a plaintiff may request "injunctive relief from violation of his federal constitutional rights." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Ramsey v. United States*, No. 3:96-CV-3358, 1997 WL 786252, at *2 n.2 (N.D. Tex. Dec. 11, 1997) (indicating that a plaintiff may seek injunctive or declaratory relief in addition to monetary relief in a *Bivens* action). Issuing an injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quotation marks and citation omitted). To obtain a preliminary injunction, the moving party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury outweighs any damage the order might cause to the responding party; and (4) that the injunction will not disserve the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000); *see also* Fed. R. Civ. P. 65. If the party seeking an injunction fails to carry the "heavy burden" to show each of these prerequisites, a preliminary injunction is not warranted. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotation marks omitted).

Here, all of Plaintiff's claims against the defendants under *Bivens* are subject to dismissal as frivolous and for failure to state a claim. *See Neitzke*, 490 U.S. at 325. He therefore cannot establish a likelihood of success on the merits of his *Bivens* action, and his motion for a preliminary injunction should be denied.

## VI. RECOMMENDATION

The *Second Amended Complaint*, received on May 10, 2021 (doc. 40), should be **DISMISSED** with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b) as frivolous and

for failure to state a claim. The *Motion to Expetite* [sic] *Service/Issueing* [sic] *Plaintiff's Preliminary Injunction*, received on December 13, 2021 (doc. 44), should be **DENIED**.

**SIGNED this 29th day of April, 2022.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE